IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLENE BALES,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

No. 3:14-cv-01553-HZ

OPINION & ORDER

George J. Wall
Law Offices of George J. Wall
1336 E Burnside, Ste. 130
Portland, OR 97214

    Attorney for Plaintiff

//

//

1 - OPINION & ORDER

Billy J. Williams
Acting United States Attorney, District of Oregon
Janice Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Charlene Bales brings this action under the Social Security Act ("Act"), 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and Supplemental Security Income Benefits ("SSI") under Title XVI of the Act. Because it is based on legally sufficient reasons supported by substantial evidence, the Commissioner's decision is affirmed.

## BACKGROUND

       Bales applied for SSI and DIB on December 30, 2011, alleging an onset date of December 1, 2011. Tr. 264–77. The Commissioner denied both applications, and Bales requested a hearing before an ALJ. Tr. 192–203, 216–17. After a hearing in September of 2013, Administrative Law Judge ("ALJ") Jo Hoenninger found Bales was not disabled. Tr. 53–66. Bales appealed. Tr. 44–46. On July 2, 2014, the Appeals Council granted Bales's request for review and Administrative Appeals Judges Mark K. Haydu and Patricia Smith issued a "Notice

2 - OPINION & ORDER

of Appeals Council Action" in which they informed Bales that the Appeals Council planned to adopt the ALJ's decision in large part, including the conclusion that Bales was not disabled. Tr. 259–60. Bales submitted new evidence to the Appeals Council, but when it issued its final decision finding Bales was not disabled, the Appeals Council noted that it did not consider the new medical evidence she submitted because it was about a later time than the period covered by her applications and the ALJ's decision. Tr. 1. The Appeals Council's determination that Bales is not disabled became the Commissioner's final decision that Bales now challenges in this Court.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past

relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## APPEALS COUNCIL DECISION

The Appeals Council adopted the ALJ's findings at steps one, two, and three of the sequential disability analysis. Tr. 5. At step one, the ALJ found Bales had not engaged in substantial gainful activity since December 1, 2011. Tr. 7, 55. At step two, the ALJ found Bales had the "following severe impairments: disc herniation with canal narrowing, right shoulder bursitis, and carpal tunnel syndrome[.]" Tr. 7, 55. At step three, the ALJ found Bales's impairments or combination of impairments did not meet or equal the severity of any listed impairments. Tr. 57. The Appeals Council also adopted the ALJ's formulation of Bales's RFC: "the claimant has the residual functional capacity to perform a less than full range of light work with the ability to frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; occasionally stoop, kneel, crouch and crawl; frequently handle and finger bilaterally; and occasionally reach overhead with the right upper extremity." Tr. 7; 58. The Appeals Council

4 - OPINION & ORDER

did not, however, adopt the ALJ's finding that Bales could perform her past relevant work as a telephone solicitor because Bales did not earn enough at that position to meet the regulatory definition of "past relevant work," and thus it could not be a basis for finding she was not disabled. Tr. 6. The Appeals Council also found that Bales could not perform her past unskilled work as a flagger, construction worker, general laborer and fast food worker because "the strength and manipulative requirements of the positions exceed [Bales's] residual functional capacity for a range of light work." Tr. 6. The Appeals Council then found that, based on Bales's age, education, skills, and RFC, she was not disabled "based on the application of Rules 202.20 and 202.13, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2 of the Social Security Administration." Tr. 6. The Appeals Council also noted that the vocational expert who testified at the ALJ hearing stated that a hypothetical person with Bales's medical-vocational profile and RFC could perform unskilled work as a price marker, cashier II, and baker conveyor-line worker, and because those jobs existed in significant numbers in the national economy, Bales was not disabled. Tr. 6.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at

1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

Bales contends the Appeals Council erred by 1) refusing to consider new and material evidence she submitted during the Appeals Council's review of her case; 2) adopting the ALJ's adverse credibility finding; 3) adopting the ALJ's rejection of the opinions of Bales's naturopathic doctor, Trevor Elliott, N.D; and 4) failing to find her depression and radiculopathy were severe at step two. Plaintiff's Brief ("Pl. Brief") at 7.

**1. New Evidence Offered to the Appeals Council**

After the ALJ issued her decision in October of 2013, Bales obtained two additional pieces of medical evidence—an April, 2014 physical capacity evaluation from the Providence Portland Worker Rehabilitation Center, and a June, 2014 neuropsychological evaluation from Robert Weniger, Psy. D.—which she submitted to the Appeals Council. Exhibits A & B to Pl. Br., ECF Nos. 13-1, 13-2. When the Appeals Council issued its final decision on August 7, 2014, the Administrative Appeals Judges wrote that they "looked at additional evidence [Bales] submitted," but because the "new information [was] about a later time," it "[did] not affect the decision about whether [Bales was] disabled beginning on or before October 11, 2013." Tr. 1. Bales argues the Appeals Council erred when it declined to consider her new medical evidence.

During the Appeals Council review process, a claimant may submit "any new and material evidence . . . which relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.976(b)(1). The Appeals Council is required to "consider" evidence it determines relates to the relevant time period on or before the ALJ's

decision. 20 C.F.R. §§ 404.970(b), 416.1476(b)(1) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only* where it relates to the period on or before the date of the administrative law judge hearing decision.") (emphasis added). "[W]hen the Appeals Council 'considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.' " Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

Where, however, the Appeals Council determines that the new evidence falls outside of the relevant time period, it has not "considered" that evidence as that term is used in the Social Security regulations. 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider . . . any new and material evidence . . . which relates to the period on or before the date of the [ALJ] hearing decision. If you submit evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence[.]"). The rejected evidence does not become part of the administrative record. Barrington v. Colvin, No. 1:13-CV-01512-JO, 2014 WL 5342371, at *8 (D. Or. Oct. 20, 2014) (evidence the Appeals Council determined "did not relate to the period under review" was not a part of the administrative record before the court).

In this case, the Appeals Council declined to consider Bales's new evidence because the reports from April and June of 2014 were "about a later time" and thus did "not affect the decision about whether [Bales was] disabled beginning on or before October 11, 2013." Tr. 1. Bales's new evidence, therefore, is not a part of the administrative record that is before the Court. Oetinger v. Astrue, No. CIV. 10-379-PK, 2011 WL 4406308, at *2 (D. Or. Aug. 23,

2011) report and recommendation adopted, No. 3:10-CV-379-PK, 2011 WL 4405851 (D. Or. Sept. 19, 2011) (evidence the Appeals Council declined to admit because it was "about a later time" and therefore did not affect the disability determination did not become part of the administrative record before the district court).

The Court could still remand Bales's case to the Commissioner for consideration of new evidence pursuant to 42 U.S.C. § 405(g) sentence six. Remand of an ALJ decision in a social security case occurs under either sentence four or sentence six of 42 U.S.C. § 405(g). Melkonyan v. Sullivan, 501 U.S. 89, 99–100 (1991). A sentence four remand is a final judgment that the "agency erred in some respect in reaching a decision to deny benefits" which must be based solely on the administrative record before the district court. Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002). Sentence six remands, by contrast, do not constitute final judgments. Id. at 855. Instead, sentence six remands are made absent a determination of whether the ALJ erred, and in only two situations: "where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Id. at 855. The claimant has the burden of demonstrating materiality and good cause. Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

Bales has failed to show good cause in this case. "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." Id. at 463 (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985)). "Merely obtaining a more favorable report after an adverse decision is insufficient to warrant a sentence six remand." Gibb v. Astrue, No. CIV. 09-533-HA, 2010 WL 988467, at *3 (D. Or. Mar. 15, 2010) aff'd sub nom. Gibb v. Comm'r of Soc. Sec., 420 F. App'x 767 (9th Cir. 2011) (citing Mayes, 276 F.3d at 463). Bales does not explain why she did not seek or could not have obtained these evaluations before the ALJ's

hearing. Marek v. Astrue, No. 1:11-CV-00354-CL, 2012 WL 3526787, at *3 (D. Or. Mar. 29, 2012) report and recommendation adopted, No. 1:11-CV-354-CL, 2012 WL 3527236 (D. Or. Aug. 15, 2012) (holding that plaintiff failed to meet her burden for a sentence six remand because she "offer[ed] no explanation why the proffered evidence was not produced in the earlier proceeding, either in her motion or in any reply to defendant's response."). Accordingly, the Court declines to remand Bales's case for consideration of new evidence under sentence six.

### 2. Credibility

Bales also asserts that the ALJ erroneously evaluated her testimony and subjective complaints about the intensity, persistence, and limiting effects of her symptoms. Pl. Brief at 13–17.[1] In determining a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical records, lay testimony, and the "effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins, 466 F.3d at 883 (quoting SSR 96–8p, 1996 WL 374184, at *5); see also 20 C.F.R. §§ 404.1529(a), 404.1545(a), 416.929(a), 416.945(a) (explaining that, in determining whether a claimant is disabled, the Social Security Administration considers "all . . . symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

An ALJ analyzes the credibility of a claimant's testimony regarding her subjective pain and other symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant,

---

[1] The Appeals Council found that "[t]he claimant's subjective complaints are not fully credible for the reasons identified in the hearing decision." Tr.7.

9 - OPINION & ORDER

however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir. 1991) (*en banc* )). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

At step one, the ALJ found that an MRI performed in December of 2011 showed a large herniated disc in Bales's lower back with pronounced spinal canal narrowing. Tr. 58. Bales testified that her back problems prevent her from working. Tr. 84–85. She said she has "good days" and "bad days"— some days she cannot go to the bathroom by herself, but other days she is "okay." Tr. 88. She claims her back prevents her from climbing stairs, carrying things like buckets of tools, and that she has to switch positions often because of the pain. Tr. 88–91, 99.

At step two, the ALJ gave "[l]imited weight" to Bales's "testimony regarding the severity of her symptoms and limitations." Tr. 59. There is no evidence of malingering in the record. Therefore, the ALJ's reasons for discounting Bales's credibility must be clear and convincing.

10 - OPINION & ORDER

The ALJ wrote that Bales's testimony that "she 'broke' her back and is 'unbearable' pain appear[ed] to be exaggerated," because Bales's medical records reflected that she got "reasonable relief of her pain with medication" and that her symptoms and functioning improved over time and with pulsed electromagnetic field therapy ("PEMF"). Tr. 59, 63–64. The ALJ also noted that objective medical testing showed her bulging disc improved, and that after treatment Bales was "independent in her movement," "did not exhibit any pain behavior," and "had no strength deficits on physical exam." Tr. 59. The ALJ also discounted her testimony because she refused to undergo back surgery, and her activities of daily living did not indicate she was suffering from "unbearable" pain that would prevent her from working. Tr. 59–60. Finally, the ALJ noted inconsistencies in Bales's testimony about her past drug use and that she seemed to engage in narcotic-seeking behavior. Tr. 63–64.

After reviewing the record, the Court finds the ALJ's numerous reasons for discounting Bales's credibility meet the required "clear and convincing" standard. For one, Bales's medical records reflect that her back pain, while certainly present, was not so severe that it would preclude her from working altogether. For example, the ALJ pointed to an MRI in December of 2012, approximately one year after Bales's initial back injury, which showed a "noticeable diminution [in] volume of herniated disk material." Tr. 606. Bales points out that the same exam showed that "a large disk herniation nonetheless remains at this level with persistent high-grade distortion and narrowing of the right later recess remaining." Tr. 606. But when Bales visited her medical providers following that MRI, they reported she was "not exhibiting pain compensation behavior" and that she was "improving." Tr. 695. In January of 2013, she reported pain that was 4/10 on average" and that she had not taken any pills for pain relief. Tr. 697. Again, her medical provider noted she was "improving," was "not exhibiting pain compensation behavior" and was

11 - OPINION & ORDER

"independent in movement." Tr. 697. The ALJ legitimately relied on inconsistencies between Bales's testimony that her pain was "unbearable" and reports from her doctors that suggested otherwise to discount her credibility. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Additionally, the ALJ noted that Bales regularly reported to her providers that she got relief from her back pain through medications such as ibuprofen, muscle relaxers, and Vicodin, and with PEMF treatment provided by her naturopath, Dr. Travis Elliott. Tr. 478, 562–63, 693. Impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Therefore, the ALJ may rely on evidence of effective treatment in making a negative credibility finding. 20 CFR § 404.1529(c)(3)(iv) & (v); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Solorio-Cardenas v. Colvin, No. 01:13-CV-02324-HZ, 2015 WL 667559, at *4 (D. Or. Feb. 15, 2015) (explaining that effectiveness of conservative treatment, including acupuncture and pain medication such as Vicodin, was not consistent with allegations of debilitating pain).

The record also supports the ALJ's conclusion that Bales engaged in drug-seeking behavior. In February of 2012, she returned for a follow up appointment about her back pain and reported that she had received forty-five Vicodin pills ten days prior and had already run out. Tr. 468. She requested more, and after she agreed to sign a pain contract and submit to a urine analysis, her provider prescribed additional pills. Tr. 466. That urine analysis came back positive for amphetamines and methamphetamine, and her providers subsequently refused to prescribe additional narcotics. Tr. 631. Bales continued to seek narcotics, and even "stormed out of the clinic" when a provider told her she was not going to get any. Tr. 612, 617, 686. Bales's drug-seeking behavior is a valid reason for discounting credibility. Edlund v. Massanari, 253 F.3d

1152, 1157 (9th Cir. 2001). Moreover, the ALJ noted that Bales testified at the hearing that she had not used methamphetamine since 2007, but tested positive for methamphetamine in 2012. Tr. 64. That inconsistency is yet another valid reason for discounting Bales's credibility. Smolen v. Chater, 80 F.3d at 1283

Finally, the ALJ also discounted Bales's credibility because Bales testified that "she [did] not want to undergo surgery essentially because her dad underwent surgery and it did not improve his symptoms." Tr. 60. "It is, of course, entirely [Bales's] right to choose whether to undergo any particular procedure," the ALJ wrote, but her "unwillingness to comply with recommended treatment suggests that her symptoms are not 'unbearable' as she reported." Tr. 60. Bales counters that the reason she refused the surgery was that "her insurance would not cover the treatment, that she was homeless, and that she had no place for post-surgical convalescence." Pl. Br. at 15. A review of the record shows that Bales gave different reasons for refusing the surgery at different times. When her doctors first recommended the surgery in the months following her injury in December of 2011, she said she was postponing surgery because of her "socioeconomic situation," Tr. 476, and in February of 2012, she was "unable to do surgery given lack of finances." Tr. 466. However, in March of 2012, she stated she was "terrified" of the procedure "because she knows several people who have had very bad results and complications from spinal surgery." Tr. 448. In April, 2012, she told doctors she "would only like neurosurgery if there is a promise of no complications" and appeared reluctant because of "previous experiences of friends/family." Tr. 521. In May of 2013, her provider quoted her as reporting "I have a broken back and I choose not to have surgery." Tr. 686. And finally, at the hearing before the ALJ, Bales testified: "I haven't had surgery because I watched my dad break his back . . . . I watched him go through surgery after surgery and it never got better. It always

made him worse." Tr. 100. With the conflicting evidence in the record and Bales's unequivocal testimony at the hearing, the ALJ was justified in interpreting the evidence as suggesting Bales had chosen to forego surgery. Rollins v. Massanari, 261 F.3d 853, 857 (2001) ("It is true that [Plaintiff's] testimony was somewhat equivocal . . . and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it."). Additionally, even if the ALJ's reasoning on this particular point was insufficient, the ALJ gave numerous, well-supported reasons for discounting Bales's testimony, and therefore the ALJ's conclusion that Bales was less than fully credible is still supported by substantial evidence in the record. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record.").

### 3. Dr. Travis Elliott, N.D.

Next, Bales contends that the ALJ improperly gave "limited weight" to the opinion of naturopathic doctor Travis Elliott, N.D. Pl. Br. at 17. Dr. Elliott submitted several opinions explaining Bales's back condition, the limitations he believed her back pain imposed on her ability to work, and his belief that Bales could not sustain competitive employment. Tr. 560, 577, 594, 700–01.

The ALJ discounted Dr. Elliot's opinion because "his assessment is inconsistent with the objective medical evidence including his own treatment records," and his opinions "appear[ed] to be based primarily on [Bales's] self-reports rather than the objective medical evidence." Tr.

61. The ALJ also noted that "Dr. Elliott is a naturopath and is not considered an acceptable medical source under Social Security Regulations and his opinion is viewed in that light." Tr. 61.

Social Security Regulations divide medical source into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06–03p, at *2. Naturopaths are not acceptable medical sources. Hollo v. Colvin, No. 3:14-CV-00366-BR, 2015 WL 3447927, at *4 (D. Or. May 29, 2015) (citation omitted). Factors the ALJ should consider when determining the weight to give an opinion from those not acceptable sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise. SSR 06–03p, at *4.

The Court finds no error in the ALJ's rejection of Dr. Elliott's opinions. As explained above, the medical evidence shows that Bales's symptoms improved with conservative treatment, such as PEMF therapy, and medications such as ibuprofen and Vicodin. Dr. Elliot's notes reflect that Bales's "functional limitations" decreased steadily until they reached only 3/10 or 2/10, Tr. 569–70, and he wrote that Bales was "improving," and "not exhibiting any pain compensation behavior." Tr. 695, 697. The inconsistency between Dr. Elliott's opinions and his the medical evidence in the record is a legitimate reason for discounting Dr. Elliott's opinion of Bales's limitations. Tommasetti, 533 F.3d at 1041. Furthermore, the ALJ found that many of Dr. Elliott's opinions seemed to be based on Bales's self-reporting, and an ALJ may reject a medical

opinion which is based on subjective complaints from a non-credible claimant. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in rejecting medical opinions based on subjective complaints); Andrews, 53 F.3d at 1043 (A medical opinion which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.").

### 4. Severity

Finally, Bales asserts that the Appeals Council erred by failing to find her depression, anxiety, and radiculopathy were severe impairments at step two. Pl. Br. at 10. At step two, the claimant bears the burden to show the existence of a severe impairment or combination of impairments—medically determinable conditions that have more than a minimal effect on the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii); Tackett, 180 F.3d at 1099; Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. § 404.1508. According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988); Colter v. Colvin, No. 3:14-CV-00896-SI, 2015 WL 2250460, at *5 (D. Or. May 13, 2015).

The ALJ's conclusion that Bales's depression and anxiety symptoms were "not severe," i.e. would not cause her significant vocational limitations, is supported by substantial evidence. The ALJ noted that while Bales has been "diagnosed with depression, seasonal affective disorder, general anxiety disorder, and panic disorder without agoraphobia," she never received treatment for her depression and "only minimal treatment for her anxiety symptoms." Tr. 56. The ALJ reasoned that Bales's medical records "often indicate that she has a normal mood and affect," and that Dr. Elliott opined that she had no significant mental deficits." Tr. 56, 690. Bales does not argue that the ALJ's analysis of these records was in error; instead she points to references in her medical records from various providers that she appeared "very labile" and "hyper," Tr. 504, that she was "agitated," Tr. 522, or was "continually disrespectful to staff" and "uncomfortable appearing, visibly angry," Tr. 481. The Court fails to see how these scattered references are related to her depression or anxiety disorder, or how they tend to show Bales is limited in performing basic work activities.

Alternatively, Bales refers to new evidence she submitted to the Appeals Council as evidence of the limiting effects of her mental impairments. As explained above, that evidence is not part of the record before this Court and thus cannot form a basis for overturning the Commissioner's decision.

Finally, Bales contends that the Appeals Council and ALJ erred at step two by "fail[ing] to discuss" her "gait problems" or "radiculopathy." The Court finds no error. The ALJ resolved step two in Bales's favor by identifying several impairments, including her "herniated disc with canal narrowing," as medically severe. Tr. 55–56. Once Bales established one or more severe impairments at step two, the ALJ was required to "consider all evidence of functional limitations imposed by medically determinable impairments, including any that were not identified as severe

17 - OPINION & ORDER

at step two." Walton v. Colvin, No. 3:11-CV-01384-AC, 2013 WL 2659658, at *6 (D. Or. June 10, 2013) (citing 20 C.F.R. § 404.1523; SSR 96–8p, *available at* 1996 WL 374184). Throughout her opinion, the ALJ discussed Bales's "ability to ambulate effectively," her allegations that she had trouble walking and suffered from leg pain "from her hip to her toes . . . in both legs but primarily on the right," and Dr. Elliot's opinion that Bales's "foot drop . . . prevents her from walking easily." Tr. 59–60. As explained above, the ALJ gave sufficient reasons for finding Bales's allegations only partially credible and for giving only limited weight Dr. Elliot's opinions. The ALJ also noted that one medical record stated that Bales "reported leg pain with numbness and muscle weakness but this was not prominent on examination." Tr. 59. In sum, the ALJ accounted for Bales's radicular symptoms and gait difficulties and incorporated only those functional limitations that were supported by substantial evidence into Bales's RFC. Therefore, any error by the ALJ in failing to list those impairments as severe at step two was harmless. Walton, 2013 WL 2659658 (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Mondragon v. Astrue, 364 F. App'x 346, 348 (9th Cir. 2010).

## CONCLUSION

For the reasons stated, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this ___25___ day of __September__, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

18 - OPINION & ORDER